IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

BOBBIE MORRIS,
On Behalf of Herself                          §
And All Others Similarly Situated             §
                                              §
        Plaintiffs,                           §
                                              §
V.                                            §          CIVIL ACTION NO. _____
                                              §
STEVENS TRANSPORT, INC.                       §
                                              §
        Defendant.                            §

Complaint

Plaintiff Bobbie Morris, the named Plaintiff ("Named Plaintiff") on behalf of herself and

employees of Stevens Transport Services, Inc similarly situated ("Collective Action Plaintiffs"),

hereby complains against Defendant as follows:

Parties

1.      Named Plaintiff is an individual.

2.      Defendant is a corporation with the principal place of business in Texas, and may

be served through its registered agent of service of process, Steven Aaron, 9757 Military

Parkway, Dallas, Texas 75227.

Jurisdiction and Venue

3.      This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiffs'

claims because they arise under the FLSA.

4.      Pursuant to 28 U.S.C.  § 139l(b)(l), venue is proper because all of the acts and/or

omissions giving rise to the claims of Named Plaintiff and Collective Action Plaintiffs occurred

in this District.

COMPLAINT – Page 1

Collective Action Allegations

5.       Named Plaintiff, who has filed a consent to join this action, brings this action for violations of the FLSA as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of herself and Collective Action Plaintiffs who likewise consent to join this action.

6.       Named Plaintiff seeks to represent herself and Collective Action Plaintiffs who consent to join this action as a company-wide class of all persons who worked or work for Defendant as over-the-road truck drivers and who have been subject to Defendant's illegal pay practices at any point from three years prior to the filing of this action to the present. Conditional certification of this civil action as an FLSA collective action should be granted based on the similarity of pay practices applicable to both Named Plaintiff and Collective Action Plaintiffs.

7.       Employees similarly situated to Named Plaintiff are known to Defendant, are readily identifiable by Defendant, and can be located through Defendant's records. Named Plaintiff does not know the exact size of the potential class as such information is in the exclusive control of Defendant; however, on information and belief, the number of potential class members is estimated to be in the hundreds.

8.       Based on the allegations in paragraphs 5 though 7, Named Plaintiff should be permitted to bring this action as a collective action for and on behalf of herself and Collective Action Plaintiffs, those employees similarly situated, pursuant to the "opt-in" provisions of the FLSA, 29 U.S.C. § 216(b).

Facts

9.      Named Plaintiff and Collective Action Plaintiffs are or have been all-over-the road truck drivers employed by Defendant and subjected to Defendant's pay practices within the last three years described in paragraphs 9 through 15.

10.      Plaintiffs were paid flat amounts per load of goods delivered rather than an hourly wage basis. As described below, however, the flat amounts were not necessarily adequate to assure payment of Named Plaintiffs and Collective Action Plaintiffs of the minimum wage established under the FLSA for all hours worked or deemed worked under the FLSA.[1]

11.      Named Plaintiff and Collective Action Plaintiffs worked multi-week trips away from home as a regular part of their duties as over-the-road truck drivers, often for as many as 12 weeks at a time. For some of these weeks, Named Plaintiff and Collective Action Plaintiffs received less than $200 pay, less than the minimum wage, despite working well over 40 hours for the week.[2]

12.      On such multi-week trips, Named Plaintiff and Collective Action Plaintiffs were frequently on duty for continuous periods of 24 hours or more. During these periods, Named Plaintiff and Collective Action Plaintiffs were either working or actively waiting to work. Specifically, during such multi-week trips, Named Plaintiffs and Collective Action Plaintiffs

---

[1]      For purposes of Named Plaintiff and Collective Action Plaintiff's minimum wage calculations, the regular rate of pay is "the quotient of the amount received during the week divided by the number of hours worked." Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 424, 65 S. Ct. 1242, 1245, 89 L. Ed. 1705 (1945) (discussing minimum wage calculations for piece work).

[2]      For such weeks, Named Plaintiff and Collective Action Plaintiffs were not compensated by shift, or in any other manner to compensate for the failure to pay the minimum wage for such weeks. As a matter of law, minimum wages that are "unpaid" for any given week and pay period may be recovered. Biggs v. Wilson, 1 F.3d 1537, 1544 (9th Cir. 1993) (finding that failure to pay the minimum wage on the pre-established pay day meant that such wages counted as "unpaid"); and 29 U.S.C. § 216 (b) (allowing for recovery of "unpaid" minimum wages and liquidated damages). There is accordingly no means by which Defendant could "make up" unpaid minimum wages by payment of larger amounts at a later date.

COMPLAINT – Page 3

were often, or even uniformly, required to remain in their trucks or in the general vicinity of their trucks continuously for more than 24 hours at a time.

13.      Under 29 C.F.R. § 785.22, the maximum amount of time an employer may dock an employee who is on assignment for more than 24 hours for sleeping and meal periods is 8 hours per day. The remaining amount of time (16 hours per day) is work time and must be paid. Additionally, in the absence of an implicit or explicit agreement between the employer and employee to the contrary, time spend in excess of 16 hours performing active work tasks in the course of a 24 hour spent on duty must also be compensated.

14.      Under 29 C. F. R §785, travel that keeps an employee away from home overnight and which is completed during regular working hours is work time and must be paid as such.

15.      Named Plaintiffs and Collective Action Plaintiffs regularly worked more than 16 hours per day while being required to (1) drive their trucks; (2) remain in the trucks while moving and transporting the cargo; (3) wait for cargo to be loaded while not being permitted to leave the trucks; (4) fuel up and perform routine maintenance to the trucks; (5) remain inside the trucks when stopped overnight to protect Defendant and its customer's property; and (6) wait to deliver cargo to Defendant's customers. Accordingly, Named Plaintiff and Collective Action Plaintiffs regularly logged more than 112 hours per workweek on lines "3" and "4" of the Qualcomm monitoring device in the cabs of their trucks (corresponding to "On-Duty Driving" and "On-Duty, Not Driving") and also occasionally logged work weeks in excess of 112 hours weekly as a result of actually working in excess of 16 hours during 24 hour duty periods in the course of a week.

16.     During the course of Named Plaintiffs' and Collective Action Plaintiffs' employment by Defendant, they were required to work substantial periods of time while not being paid. Between 2017 and 2019, Defendant paid limited flat or hourly amounts for certain parts of working time, but at other periods of time, paid no amounts whatsoever. Specifically:

(a)     Initially, demurrage pay was paid upon completion of a 24 hours of time spent idle and waiting. Upon completion of the 24 hour period, demurrage would be paid for the number of hours until the cargo was unloaded, up to 14 hours.[3] Drivers, however, were "on duty" and responsible for the safety and security for the entire 24 hour demurrage period.[4] Later, demurrage pay was eliminated entirely, and Plaintiffs were not paid for any time not spent driving despite the necessity of spending in excess of 24 hours idle but on duty on a regular basis.

(b)     Subsequently, the demurrage period dropped from 24 hours to 12 hours and then to 6 hours. Later, the demurrage period was raised back to 24 hours.

(c)     Contemporaneous with the increase in the number of hours required for demurrage pay, Defendant also eliminated breakdown pay for work time spent protecting and waiting for repairs on trucks.

(d)     Defendant also eliminated pay for work time spent obtaining required oil changes and "washouts" of trucks, both of which are required in order to maintain fully operational trucks.

(e)     Defendant also eliminated standby and layover pay.

---

[3]     For instance, a driver could be made to sit idle for 24 hours with no pay, and the cargo was unloaded three hours after demurrage pay came into effect, the driver would only be paid for the three hours, and not be paid for the full portion of the 14 hour shift they could normally expect to be paid for an average work day.

[4]     In the course of the calculation of such payments, Defendant violated 29 C.F.R. § 785.22 by improperly discounting time spent working by Named Plaintiffs as time spent in the sleeper berth when in fact Named Plaintiffs and Collective Action Plaintiffs were expected to be performing active work tasks for the purposes of determining demurrage pay.

COMPLAINT – Page 5

17.     The effect of the nonpayment of minimum wages due to Named Action Plaintiffs

and Collective Action Plaintiffs described in paragraphs 9 through 15 was not corrected by

payment of any amounts described in paragraph 16. Named Plaintiffs and Collective Action

Plaintiffs frequently made less than the minimum wage as applied to all hours of work during

multiple work weeks, even after taking account of load payments, demurrage payments,

breakdown payments, standby payment, and layover payments.

Causes of Action

18.     For her first cause of action, Named Plaintiff, on her own behalf and on behalf of

Collective Action Plaintiffs and would show that Defendant violated and continues to violate 29

U.S.C. § 206(b) by failing to pay the minimum wage per each hour worked by them irrespective

of amounts paid them for each workweek or pay period as a whole.[5]

WHEREFORE, Plaintiffs pray that this Court enter an Order:

1)      Certifying this action as a "collective action" pursuant to the FLSA;

2)      Enjoining Defendant from continuing to maintain illegal pay practices in

        violation of the FLSA;

3)      Providing that Defendant compensate, reimburse and make Named

        Plaintiff and Collective Action Plaintiffs whole for any and all minimum

---

[5]      Recent developments in the law reflect that the so-called "Klinghoffer Rule" setting the workweek as the measuring stick for FLSA minimum wage violations has fallen out of favor. Compare United States v. Klinghoffer Bros. Realty Corp., 285 F.2d 487 (2d Cir. 1960) (establishing the workweek as the "measuring rod" for FLSA violation); to Norceide v. Cambridge Health All., 814 F. Supp. 2d 17, 23 (D. Mass. 2011) (declining to follow Klinghoffer on the basis that the original decision was poorly reasoned as a matter of statutory construction); Douglas v. Xerox Bus. Services, LLC, C12-1798-JCC, 2015 WL 10791972, at *7 (W.D. Wash. Dec. 1, 2015), aff'd, 875 F.3d 884 (9th Cir. 2017) (declining to follow Klinghoffer) The Fifth Circuit has been conspicuously quiet on the continuing vitality of Klinghoffer. The merits of Klinghoffer aside, Plaintiff can establish an FLSA violation under either the workweek or hourly standard.

COMPLAINT – Page 6

wages they would have received had it not been for Defendants' illegal

actions.

4)      Awarding Plaintiffs liquidated damages equal to their actual damages in

this case;

5)      Awarding Plaintiffs the costs and expenses of this action and reasonable

legal fees as provided by applicable law; and,

6)      Awarding Plaintiffs all other relief as the Court deems appropriate.


Respectfully submitted,


/s/ Robert E. Goodman, Jr.
Robert E. Goodman, Jr.
State Bar No. 08158100
reg@kilgorelaw.com
Kilgore & Kilgore, PLLC
3109 Carlisle Street
Dallas, Texas 75204
(214) 379-0823
(214) 379-0840 (telecopy)

COUNSEL FOR PLAINTIFFS